896 F.Supp. 867 (1995)
OAK RIDGE CARE CENTER, INC., Plaintiff,
v.
RACINE COUNTY, WISCONSIN and Town of Yorkville, Wisconsin, Defendants.
Civ. A. No. 94-C-1328.
United States District Court, E.D. Wisconsin.
August 11, 1995.
*868 *869 Michael J. Widmann, Welcenbach & Widmann, Milwaukee, WI, for plaintiff.
Mark Janiuk, Corporation Counsel, Victoria L. Kies, Ass't Corp. Counsel, Racine, WI, & Michael J. Cieslewicz, Kasdorf, Lewis & Swietlik, Milwaukee, WI, for Town of Yorkville.

*870 DECISION AND ORDER DENYING MOTIONS TO DISMISS
REYNOLDS, District Judge.
Plaintiff Oak Ridge Care Center, Inc. ("Oak Ridge"), filed this action on November 30, 1994, alleging that defendants violated the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq., and the Fair Housing Act, 42 U.S.C. §§ 3601 et seq., by refusing to issue a conditional use permit so that a drug and alcohol rehabilitation facility could operate on Oak Ridge's property. Defendant Racine County has filed motions to dismiss and defendant Yorkville has filed motions to dismiss and for summary judgment, which the court shall deny. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

I. Background

A. Facts
Oak Ridge operates an elder care facility on its property in the Town of Yorkville, Racine County, Wisconsin. Oak Ridge operates the elder care facility under an existing nonconforming use agreement with the County because the property is presently zoned as a general farming and residential district. (Am.Compl. ¶ 8/Ex. 2.)
Between 1991 and 1994, Oak Ridge attempted to sell its property but received only three inquiries. In April 1994, Oak Ridge found a buyer, Teen Challenge of Wisconsin, Inc. ("Teen Challenge"), a Christian growth and development center. Teen Challenge intended to use the property and facility as a residential drug and alcohol rehabilitation center for twenty adult residents. (Id. ¶ 16.) Teen Challenge agreed to purchase Oak Ridge's property for $250,000 contingent upon obtaining a conditional use permit from the County by September 14, 1994. (Id. ¶¶ 14-15.)
In June 1994, Teen Challenge submitted an application for conditional use to Racine County and wrote on the application that Teen Challenge was acting as an agent for Oak Ridge. (Id./Ex. 2.) Yorkville residents, and the Town of Yorkville itself, proceeded to submit petitions and letters in opposition to the presence of the rehabilitation center. In July 1994, at a public hearing, numerous Yorkville residents urged rejection of the conditional use permit on the grounds that the rehabilitation facility would be a security risk to neighborhood schools, lure criminal activity into the community, bring too much traffic, cause sewage problems, decrease property value, and fail due to inadequate staffing and methodology. (Id. ¶ 25.)
After the public hearing, County officials voted 4-3 to deny the conditional use permit. The County stated that it denied the permit because the rehabilitation facility was an inappropriate land use and belonged in "an urban area." (Id. ¶ 33.) In August 1994, Oak Ridge advised the County that Oak Ridge would face economic damages if the conditional use permit were denied, but the County did not reverse its decision. On September 14, 1994, Teen Challenge canceled its contract to purchase Oak Ridge's property because a conditional use permit had not been issued. (Id. ¶ 41.) Oak Ridge has since been unsuccessful in selling the property and claims to be suffering economic damages as a result of its continued mortgage obligation on the property. (Id. ¶ 43.)
Oak Ridge claims that the County denied the use permit based on stereotypical attitudes about and discriminatory animus toward disabled people (alcoholics and drug addicts). (Id. ¶¶ 34-35.) Oak Ridge brings this action under Title VIII of the Fair Housing Act, 42 U.S.C. §§ 3600 et seq. ("FHA"), and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq. ("ADA").

B. Posture
Defendant Racine County has moved to dismiss the plaintiff's complaint for lack of standing and for failing to state a claim. Defendant Yorkville has moved for summary judgment. Because the record differs between a dismissal motion and a summary judgment motion, the court will consider the motions separately.

II. Analysis

A. Racine County's Motion to Dismiss
Racine County moves to dismiss Oak Ridge's ADA claim for lack of standing under Fed.R.Civ.P. 12(b)(1). In addition, Racine County seeks to dismiss plaintiff's FHA *871 claim for lack of standing under Fed.R.Civ.P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6). For reasons set forth below, the court shall deny Racine County's arguments for dismissal.

1. Standing under the Americans with Disabilities Act
Standing questions are to be resolved according to a two-part inquiry that considers: (1) Article III constitutional limitations and (2) prudential limitations. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607-08, 60 L.Ed.2d 66 (1979). A litigant must pass both constitutional and prudential muster to have standing to sue. Family & Children's Ctr., Inc. v. School City of Mishawaka, 13 F.3d 1052, 1058 (7th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994).

a. Article III Limitations
Article III requires the existence of a case or controversy between plaintiff and defendant. To satisfy Article III minima, a plaintiff must allege: (1) an "injury in fact" (2) fairly traceable to the defendant's conduct (3) that a favorable federal court decision likely would redress or remedy. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The Supreme Court has advised that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we `presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. 504 U.S. at 561, 112 S.Ct. at 2137 (quoting Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990)).
The Seventh Circuit has not yet had the opportunity to address the issue of standing under the ADA. But this court concludes that Oak Ridge has satisfied the Article III standing test, which is "undemanding." North Shore Gas Co. v. EPA, 930 F.2d 1239, 1242 (7th Cir.1991). By alleging that Racine County's discriminatory actions resulted in Oak Ridge's loss of sale and a continuation of Oak Ridge's continued mortgage obligation, Oak Ridge has adequately alleged injury in fact fairly traceable to the County's conduct. And Oak Ridge's request for monetary relief would redress or remedy its injury.

b. Prudential Limitations
The harder question is whether Oak Ridge has standing under a prudential analysis. Prudential limitations include the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the "zone of interests" protected by the law invoked. Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324-25, 82 L.Ed.2d 556 (1984). The zone of interests limitation requires that the court consider statutory language and congressional intent. The Supreme Court has stated that "persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others." Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).
The primary prudential inquiry for this court is whether the ADA statute grants a cause of action to Oak Ridge to seek relief on the basis of alleged discrimination against the disabled, even though Oak Ridge itself is not disabled and does not represent disabled people. In support of its position that Oak Ridge lacks standing to sue under the ADA, Racine County directs the court's attention to a New Jersey case, Kessler Inst. for Rehabilitation, Inc. v. Mayor of Essex Fells, 876 F.Supp. 641 (D.N.J.1995), which held that the plaintiff (a rehabilitation institute) lacked standing to sue because Title II of the ADA confers a substantive right only upon "qualified individuals with a disability" themselves, not on entities that work with or for such individuals. Id. at 653. Because Oak Ridge, like the plaintiff in Kessler, is not a "qualified individual with a disability," Kessler is authority for denying Oak Ridge standing to sue Racine County under Title II of the ADA.
*872 The Kessler court failed to consider the regulations implementing the ADA. The federal regulations state: "A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g) (1994) (emphasis added). Moreover, in adopting these regulations, the Department of Justice was following Congressional intent: "Title II should be read to incorporate provisions of titles I and III which are not inconsistent with the regulations implementing Section 504 of the Rehabilitation Act of 1973, such as Section 102(b)(4) of the ADA [codified as 42 U.S.C. § 12112(b)(4)]." H.R. Report No. 101-485(III), 101st Cong., 2nd Sess. 51 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 474. The regulations take their language directly from 42 U.S.C. § 12112(b)(4).
In the only reported federal case other than Kessler to address the issue of Title II standing for plaintiffs who are not themselves disabled individuals, a Florida court held that plaintiffs did have standing under Title II because 28 C.F.R. § 35.130(g) specifically grants an independent right of action to entities who are not disabled but are discriminated against because of their known association with disabled people. Tugg v. Towey, 864 F.Supp. 1201, 1208 (S.D.Fla. 1994).
ADA standing for plaintiffs like Oak Ridge is also clearly contemplated in the Appendix to 28 C.F.R. § 35.130(g) (1994). The Appendix reports that "Congress considered, and rejected, amendments that would have limited the scope of this provision to specific associations and relationships." For example, the Appendix states: "[I]f a public entity refuses admission to a person with cerebral palsy and his or her companions, the companions have an independent right of action under the ADA and this section [42 U.S.C. § 12132]." Id.
Like the associates of the person with Cerebral Palsey, Oak Ridge had only an indirect association with disabled individuals. Thereby, the federal regulations that implement Title II of the ADA grant such entities an independent right of action. When Teen Challenge applied for the conditional use permit, it stated that it was acting as an agent for Oak Ridge.[1] In light of this association or relationship, and since Oak Ridge alleges that the County's discriminatory animus toward the disabled resulted in the denial of the permit, Oak Ridge may bring an action based on its association with disabled individuals, pursuant to 28 C.F.R. § 35.130(g).
Even without consulting the appendix, the regulations' plain meaning give Oak Ridge standing. The regulations adopt the same broad associational language as the FHA uses. Therefore, standing for associational suits must be as broad under the ADA as the FHA (see below II.A.2.).[2]
Within its standing argument, Racine County actually makes a motion to dismiss for failure to state a claim. Fed.R.Civ. Proc. 12(b)(6). Because the parties have briefed the issue, the court will treat it as motion to dismiss. The county argues that its refusal to grant a conditional permit is not a public service, a program, or an activity as required by the statute. Def.'s Brief at 7 (quoting, Kessler, 876 F.Supp. at 655 (D.N.J. 1995)). In reply, the plaintiff distinguishes Kessler: the plaintiff has alleged the discrimination in the evaluation process, not just a refusal of a conditional permit.
Although the plaintiff's distinction is unpersuasive, a conditional use permit is a benefit of a public entity's activity, zoning. When a zoning authority gives someone a *873 conditional use permit, that person has received a benefit. Just as granting marriage licenses is an activity of a public entity, so are zoning decisions. See, T.E.P. v. Leavitt, 840 F.Supp. 110 (D.Utah 1993) (ADA invalidated statute that forbade people with AIDS from marrying). Even if zoning decisions are not an activity, a service, or a program, the statute's catch-all phrase protects Oak Ridge from being "subjected to discrimination by any such entity." Cf. Cleburne Living Center Inc. v. City of Cleburne, 726 F.2d 191, 194-95 (5th Cir.1984) vacated on other grounds 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).[3] The plaintiffs have alleged a discrimination in public services.

2. Standing under the Fair Housing Act
The sole requirement for standing to sue under the FHA is the Article III minima of injury in fact. Havens Realty Corp. v. Coleman, 455 U.S. 363, 372, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982). A plaintiff need only allege that, as a result of the defendant's actions, he has suffered a "distinct and palpable injury." Id.
The court concludes that Oak Ridge has alleged an injury in fact and, therefore, has standing to sue under the FHA. Although the County argues that Oak Ridge has failed to state an injury in fact under the FHA because Oak Ridge does not represent handicapped individuals, this argument flies in the face of the Supreme Court's teachings in Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). In Bellwood, the Court stated:
[A]s long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed. The central issue at this stage of the proceedings is not who possesses the legal rights protected by [the FHA], but whether respondents were genuinely injured by conduct that violates someone's [FHA] rights, and thus are entitled to seek redress of that harm.
Id. at 103 n. 9, 99 S.Ct. at 1609 n. 9. See also Gorski v. Troy, 929 F.2d 1183, 1189 (7th Cir.1991) ("a plaintiff suing pursuant to the FHA need not be a member of the class that was the object of discrimination to satisfy the injury-in-fact requirement"). Oak Ridge's allegation that the County's denial of a conditional use permit prevented a sale of its property and led to economic damages (a continued mortgage obligation on the property) constitutes an allegation of injury in fact. At this stage of the proceedings, the court is not to consider the merits of Oak Ridge's complaint but merely whether federal court is a proper forum for the complaint.

3. Adequacy of Claim under the Fair Housing Act
Racine County also moves the court to dismiss Oak Ridge's complaint for failure to state a claim upon which relief can be granted. A complaint should not be dismissed on these grounds unless it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering motions to dismiss, this court must accept as true the plaintiff's factual allegations and must draw all reasonable inferences from the pleadings in favor of the plaintiff. Gillman v. Burlington N.R.R., 878 F.2d 1020, 1022 (7th Cir. 1989).
Under the statute, it is illegal
To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of
(A) that buyer or renter,
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

*874 (C) any person associated with that buyer or renter.
42 U.S.C. § 3604(f)(1). Under subsection c, the defendant must make the plaintiff's property unavailable and the plaintiff's association with a handicapped group must cause that unavailability. The phrase "to otherwise make unavailable or deny" includes exclusionary zoning decisions. See Southend Neighborhood Improvement Ass'n v. County of St. Clair, 743 F.2d 1207, 1209 (7th Cir. 1984).
The plaintiff can prove that discrimination caused the zoning denial under three theories. Under a disparate treatment theory, animus towards the handicapped causes, at least in part, the defendant to deny the zoning exemption; therefore, the plaintiff must prove discriminatory intent. North Shore-Chicago Rehabilitation Inc. v. Village of Skokie, 827 F.Supp. 497, 507 (N.D.Ill. 1993). Under a disparate impact theory, the plaintiff must prove that the defendant's actions have a greater adverse impact on the handicapped than on other groups. Id. at 499. Once the plaintiff establishes the prima facie case, the zoning authority must demonstrate a legitimate, nondiscriminatory reason for its action. Id. at 500. Under the third theory, the plaintiff must prove that the zoning authority failed to make reasonable accommodations in its rules or procedures, and that those modifications would be less burdensome to the handicapped. Id. at 508.
Oak Ridge's complaint alleges an action under the FHA. Oak Ridge alleges that the County and Yorkville made Oak Ridge's property unavailable for sale by denying the conditional use permit. Further, Oak Ridge alleges that its association with Teen Care caused the denial. Although not a model of clarity, the complaint alleges all three theories of discrimination. Because Oak Ridge alleges that the County and Yorkville denied the conditional use permit to prevent disabled individuals from using the property, the plaintiff has alleged disparate treatment. (Am.Compl. ¶ 36.) Because Oak Ridge has alleged that the County and Yorkville's denial had a greater impact on disabled individuals than other groups, the plaintiff has alleged disparate impact. (Id. ¶ 37.) Finally, Oak Ridge alleges that approving the permit was a reasonable accommodation that the defendants failed to make. (Id. ¶ 38.)
Two of Racine's objections challenge the complaint's sufficiency. A third objection argues that the case belongs in state court. First, Racine County attacks the complaint because Oak Ridge fails to allege damages to a handicapped group. The statute, however, protects those who have an association with the handicapped. Just as a developer who wants to build low-income housing suffers an injury under the statute, Oak Ridge suffered an injury if the zoning authorities prevented Oak Ridge from selling its property to a group home for the disabled. See Metropolitan Housing Dev. Corp. v. Vil. of Arlington Hts., 616 F.2d 1006 (7th Cir.1980).
Second, Racine County argues that Oak Ridge must allege unavailability of housing for the handicapped. The plaintiff's complaint does allege that the County and Yorkville affected the availability of housing to the disabled by preventing Oak Ridge from selling its property to Teen Care. Under either a disparate treatment or failure to make reasonable accommodations theory, this allegation is sufficient. Under the disparate impact theory, if the zoning combined with the denial of conditional use permits prevents alcoholics from living in group homes, then the policy disproportionately affects the handicapped. See Oxford House, Inc. v. Town of Babylon, 819 F.Supp. 1179, 1183 (E.D.N.Y.1993) (alcoholics "are more likely than those without handicaps to live with unrelated individuals"). Id.
Third, Racine County argues that, because the plaintiff has not exhausted its state remedies, the case belongs in state court. Unlike the cases cited by the defendant in which the plaintiff failed to establish a substantive due process right, the Fair Housing Act gives the plaintiff a right to sell its property free from discrimination. The federal courts "regularly have provided relief from exclusionary zoning" when the plaintiff has suffered discrimination. Arlington Heights, 616 F.2d at 1011. Moreover, the defendants cite no cases requiring a party to exhaust state remedies before bringing a claim under the Fair Housing Act.
*875 The court concludes that Oak Ridge has stated a claim against Racine County because the FHA contemplates plaintiffs such as Oak Ridge bringing suit.

B. Yorkville's Dismissal and Summary Judgment Motions

1. Motion to Dismiss
Defendant Yorkville, in its brief, adopts the arguments raised by Racine County's motion to dismiss. For the same reasons that the court denies Racine's motion, the court denies Yorkville's motion to dismiss.

2. Motion for Summary Judgment
Defendant Yorkville also moves for summary judgment on separate grounds. Yorkville does not challenge the evidence supporting discriminatory animus, disparate treatment, or reasonable accommodation; rather, Yorkville argues that it never participated in the vote to deny the conditional use permit. Therefore, Yorkville concludes, it is not responsible for that vote. The court denies summary judgment because Yorkville has not addressed the claims asserted by Oak Ridge.

a. Facts Relevant to Summary Judgment
In support of its motion, Yorkville submits a lone affidavit of the Town Chairman, James Moyer, and the minutes of the hearing on Teen Challenge's application for a conditional use permit. The hearing was before the Racine County Planning & Development Committee, not the Town of Yorkville. (Def.Aff. ¶ 4). At that meeting, the Development Committee  not the Town of Yorkville voted on the conditional use permit. Id. Further, neither the Town Board nor any of its governmental agencies conducted any vote relative to Teen Challenge of Wisconsin's application for a conditional use permit. (Def.Aff. ¶ 5).
The plaintiff also submits a lone affidavit with the county zoning ordinances attached as an exhibit.[4] Under those ordinances, the town can deny a permit if the town opposes the permit and if the town takes that position before the county board's meeting. (Pl.Ex. B: § 20-1181(c)). The town may communicate its position by representative. The town's failure to communicate its position is an approval of the committee's actions. (Pl. Ex. B: § 20-1180(a)). If, however, a representative is present at the meeting, the representative shall meet with the committee after the hearing and indicate the Town's position. Id. If the town asks for an extension, the committee shall (apparently the committee has no discretion) automatically grant it. Id. at § 20-1181(c).
At the meeting, Mr. Moyer read a letter to the County, asking for more time to consider the proposal. The Board did not grant an extension; instead, it immediately voted to deny the permit. (Def.Ex. 1).

b. Analysis
Under Fed.R.Civ.P. 56(c), the court must grant summary judgment when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the initial responsibility of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the non-moving party may not rely on the pleadings; instead, the non-moving party must demonstrate a material factual dispute, using affidavits and other exhibits. Id. at 324, 106 S.Ct. at 2553.
The court determines whether there is a genuine issue of fact; it does not weigh the evidence. Oriental Health Spa v. City of Fort Wayne, 864 F.2d 486 (7th Cir. 1988). All inferences are made in the light most favorable to the nonmoving party. Illinois v. Bowen, 808 F.2d 571, 575 (7th Cir. 1986). If the evidence supports different inferences, the court will deny the motion. Dowden v. Polymer Raymond Inc., 966 F.2d *876 1206 (7th Cir.1992). And, if the court has any doubt about the existence of a genuine issue, the court must resolve that doubt against the moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).
Although the defendant need not submit any affidavits in support of a summary judgment, the defendant must articulate why the plaintiff's case fails. Johnson v. Pelker, 891 F.2d 136 (7th Cir.1989) (denying summary judgment because the defendants had not carried their initial burden). Courts will not make arguments for the litigants. Gold v. Wolpert, 876 F.2d 1327, 1333 (7th Cir.1989).
Yorkville's motion fails to meet its initial burden. In its complaint, Oak Ridge alleges actions that discriminated against Teen Care and Oak Ridge's association with it. To begin with, Oak Ridge claims Yorkville subjected Teen Care to an investigation and procedures that it used for no other conditional permit applicant. Second, Yorkville, Oak Ridge alleges, constructively denied the permit by making its position known to the county board. Nowhere in its brief or its affidavit does Yorkville respond to the discriminatory procedure charge. Because discriminatory procedures or neutral procedures applied in a discriminatory manner violate the FHA, the court must deny the summary judgment motion as to the allegation of discriminatory procedures. See United States v. Palatine, 37 F.3d 1230, 1234 (7th Cir.1994).
Yorkville does, however, argue that the Town never voted to deny Teen Care the conditional use permit, and any statements it made are nothing more than the Town's position. This argument and its underlying facts ignore the plaintiff's constructive voting theory. Under the zoning ordinance, the Town has the power to deny a conditional use permit, so its public positions are not mere words. Moreover, Oak Ridge alleges, the town chairman, in his representative capacity, attended the town meeting and asked for an extension to further investigate the permit. Although the chairman asked for an extension, the board, which must grant the extension under the ordinance, denied it and rejected the permit. The plaintiff argues that in making the request for the extension to investigate, the Town was actually making known its opposition to the Board. Further, the Board could deny the extension only if it knew the Town also opposed issuing the permit. This two inferences bar summary judgment against Oak Ridge's claim that Yorkville is liable for the decision to deny the permit.
Yorkville has never challenged this argument. Just as a landlord could not defeat a constructive eviction claim by denying physical eviction, Yorkville cannot rest solely on its proof that it did not actually vote to deny the permit. It may be that without submitting any supporting material, Yorkville could explain why this theory is insufficient legally or factually, but the court will not make arguments for the litigants. Because Yorkville has not adequately addressed the constructive voting issue, the court denies Yorkville's motion for summary judgment.[5]

III. Conclusion
For the foregoing reasons, the court DENIES Racine County's and Yorkville's motions to dismiss. The court also DENIES Yorkville's motion for summary judgment.
SO ORDERED.
NOTES
[1] Plaintiff's amended complaint states that Teen Challenge was acting as an agent for Oak Ridge. (Am.Compl. ¶ 19.) However, the actual application for conditional use, attached as Exhibit 2 to plaintiff's amended complaint, states that Teen Challenge was "acting as an agent for Timber Oaks Care Center." The court presumes that Timber Oaks Care Center and Oak Ridge are the same entity for present purposes.
[2] The court realizes that Title II of the ADA, under this interpretation overlaps with 42 U.S.C. § 3604(f)(1). Such overlap gives plaintiffs no additional benefits, but it will likely confuse a jury who will not understand why it is deciding two claims that are indistinguishable. Nonetheless, the breadth of the statute compels this result.
[3] In Cleburne, the plaintiffs brought an action under the Rehabilitation Act. The Rehabilitation Act prohibited public entities that received federal funding from discriminating against the handicapped. Title II of the ADA expanded the Rehabilitation Act's prohibition to all activities of public entities, not just federally funded ones. Cleburne refused to apply the Rehabilitation Act to a zoning decision because the plaintiffs failed to show what federal funding was involved. By implication, the zoning act was a public activity, just one without federal funding. Therefore, the ADA should apply to zoning decisions.
[4] The plaintiff also submitted a letter, which it claimed was from the Town President. As Yorkville pointed out, the letter is signed Richard A. Struck, Yorkville resident, not Richard A. Struck, Yorkville President. In its motion to supplement its response brief, the plaintiff now concedes, that it misread the letter and withdraws it as a document supporting its position. The court grants the motion.
[5] In its complaint, Oak Ridge alleges that the chairman stated that the Town wanted the board either to extend the time or deny the permit; however, because Oak Ridge has submitted no supporting papers verifying that specific fact, the court will not consider it on summary judgment.